UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES BILLIOT, JR., ET AL.** | **CIVIL ACTION: 2:20-cv-2997** |
| **v.** | **JUDGE WENDY B. VITTER** |
| **MAXUM INDEMNITY COMPANY, ET AL.** | **MAG. JUDGE DONNA CURRAULT** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**NOW COMES** Defendants Howard L. Nations, Cindy Nations, Howard Nations, APC, Gregory D. Rueb, Rueb & Motta, APLC, and The Rueb Law Firm, APLC ("Defendants"), through undersigned counsel, who respectfully submit this Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief may be granted. The claims brought against Defendants by Plaintiffs Brett Bascle, Lloyd Cancienne, Jr., Troy Pellegrin, Darren Pitre, Dean Richard, and Thomas Tegart ("Plaintiffs"), should respectfully be dismissed with prejudice as they are perempted as a matter of law under La. Rev. Stat. §9:5605 because the last possible date of alleged malpractice occurred more than three years before this suit was filed. Additionally, any claims of fraud alleged by Plaintiffs to have been committed by Defendants should be dismissed for failure to state a claim upon which relief may be granted because Plaintiffs failed to plead fraud with particularity as mandated by Rule 9(b) of the Federal Rules of Civil Procedure.

**I.  LIMITED FACTUAL BACKGROUND**

As a result of the BP Deepwater Horizon oil spill ("BP Oil Spill") on April 20, 2010, litigation designated as MDL No. 2179 proceeded in the United States District Court for the Eastern District of Louisiana. The litigation was ultimately settled and memorialized in the Deepwater Horizon Economic and Property Damages Settlement Class, which included persons having

1

sustained losses as a result of the BP Oil Spill. Each plaintiff here claimed to be a member of the Economic and Property Damages Settlement Class because each plaintiff alleged that, as a result of the BP Oil Spill, they sustained significant economic losses since he or she could no longer catch or harvest fish and seafood and were required to purchase food to replace the fish and seafood he or she otherwise would have caught and harvested.

In late April 2015, Defendants, with other various defendants, formed a joint venture to engage BP Subsistence clients and to file claims on their behalf with the Deepwater Horizon Economic Claims Center ("DHECC"). The deadline to file a BP Subsistence Claim with the DHECC was June 8, 2015. Plaintiffs allege that their respective BP subsistence claims were denied because the Defendants, in concert with the other members of their joint venture, manipulated each plaintiff's data with inaccurate and fraudulent claim information. Plaintiffs allege that this is why his or her claim was denied by the BP Settlement Program's Fraud, Waste, and Abuse ("FWA") program or the BP Settlement Program's Claims Review and Appeals Process.

### A. The Instant Lawsuit

As previously stated, the Defendants and other various defendants formed a joint venture to engage and represent BP Subsistence Claimants. To qualify as a Subsistence Claimant, the claimant had to provide a completed Subsistence Claim Form and Supporting Documentation establishing, among other things, that he or she "relied upon subsistence resources that were diminished or restricted in the geographic region used by the Claimant due to or resulting from the BP Oil Spill." DHECC also required claimants to submit licenses applicable to all claimed species or proof of a licensure exemption.

Each claimant was required to provide, under oath, detailed information in order to prove their claim including an explanation of their subsistence needs, a detailed list of the specific species

of game he or she harvested or fish he or she caught for subsistence use in the year before the BP Oil Spill, the relevant time period, the locations, and the quantities in pounds of each species that the claimant consumed or gave to family members for personal consumption. Each claimant was further required to list in detail each species that he or she could not harvest because of the BP Oil Spill and to provide the lost weight of each species in pounds and the percentage of total species harvested that were used for consumption or barter.

Each claimant had to list each person in their extended family whom the claimant supported prior to the BP Oil Spill with harvested game or fish, including names, ages, genders, social security numbers and relationships. Each claimant had to also state the percentage of his or her individual or his or her family's total diet which was satisfied through subsistence activities. Each claimant was required to list any quantities of fish or game which he or she harvested for subsistence purposes after the BP Oil Spill from April 20, 2010 through December 31, 2011.

Payments to BP Subsistence Claimants were determined using a "Subsistence Formula" made up of the aforementioned individualized components, including the number of family members dependent on subsistence, the type of amount of species lost, the area where the claimant fished, the duration that the area was closed, the retail value of the lost species, and the caloric intake of the claimant and his or her family.

Although there was no pre-cap on payment amounts for Subsistence claims, certain mechanisms were put in place under the BP Settlement program to prevent fraudulent claims. As provided in the Settlement Agreement, the Claims Administrator would not pay subsistence claims with a base amount greater than $10,000.00 per extended family unit without conducting a field visit and investigation as to the accuracy of the claim prior to payment.

Field Visits were conducted in person by a representative of the Claims Administrator who traveled to the claimant's home, dock locations, and other applicable areas to evaluate any equipment used by claimants for subsistence purposes.

Each Plaintiff alleges that he or she retained the Defendants for the purpose of filing and completing his or her BP Subsistence Claim. Plaintiffs allege the information the Defendants and the other various defendants submitted on their behalf for each Plaintiff was inaccurate, causing the Plaintiffs' BP Subsistence Claims to be denied.

Plaintiffs filed the instant lawsuit in the 17th Judicial District Court for the Parish Lafourche on July 6, 2020. Defendants then removed the instant lawsuit to the United States District Court for the Eastern District of Louisiana on November 4, 2020.

## II.     LEGAL STANDARD

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed to be true and viewed in the light most favorable to the plaintiff.[1] To survive a motion to dismiss, a complaint must contain sufficient factual matter. . .to state a claim to relief that is plausible on its face.[2] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[3] Factual allegations must be enough to raise a right of relief above the speculative level.[4] To survive a Motion to Dismiss for failure to state a claim upon which relief may be granted, Plaintiffs' Complaint must establish more than a "sheer possibility" that they may

---

[1] *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *Iqbal*, 556 U.S. at 678.

[4] *Twombly*, 550 U.S. at 555.

4

be entitled to the relief sought.[5] Determining whether a complaint states a plausible claim for relief will. . .require. . .the reviewing court to draw on its judicial experience and common sense.[6] The Court is not bound to accept as true legal conclusions couched as factual allegations.[7]

Attachment of documents outside the complaint does not automatically convert a Rule 12(b)(6) motion to dismiss for failure to state a claim into a Rule 56 motion for summary judgment.[8] When considering a Rule 12(b)(6) motion, a court may also consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[9] Finally, when considering a motion to dismiss, federal district courts may also consider matter of which they may take judicial notice.[10]

Here, the documents attached to this motion by Defendants are referenced in Plaintiffs' Joint Petition for Damages. In paragraph 17, subsection f, Plaintiffs state:

> Every Plaintiff received a DHECC Incompleteness Notice, Denial Notice, FWA Notice, or Appeal Denial, all without any knowledge or communication from Defendants who had sole access to these notices and a non-delegable duty to provide their clients with accurate facts pertaining to their legal representation.

Defendants have attached each Plaintiffs' Denial Notice or Appeal Notice received from the DHECC. In addition to being specifically referenced in Plaintiffs' Joint Petition for Damages, these documents are also central to the Plaintiffs' claim against Defendants. Plaintiffs allege that

---

[5] *Iqbal*, 556 U.S. at 679.

[6] *Id.* at 679.

[7] *Id.* at 677.

[8] *Maloney Gaming Management, LLC v. St. Tammany Parish*, 456 F. App'x 336, 340-41 (5th Cir. 2011).

[9] Pursuant to these principles, Defendants attach to this Motion the Denial Notice or Appeal Notice for each of the plaintiffs whose claims are perempted.

[10] *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996) (citing Fed. R. Evid. 201(f) – a court may take judicial notice at any stage of a proceeding.

Defendants' negligence resulted in their respective subsistence claims being denied. The attached documents are evidence of the denial and the date on which their claims were denied.

Defendants submit that it is beyond the scope of a Rule 12 motion to present evidence such as the retainer agreements allegedly signed by the Plaintiffs. It is expected, however, that Plaintiffs erroneously will apply Mississippi law based on the following choice of law provision:

> VII. Mississippi Law.   This Contract shall be construed under and in accordance with the laws of the State of Mississippi, and all obligations of the parties created hereunder are performable in Mississippi.

Paragraph VII is a single sentence with two parts, a choice of law provision plus a declaratory statement of fact. The choice of law provision states "This Contract shall be construed under and in accordance with the laws of the State of Mississippi." The statement of fact provides that "(A)ll obligations of the parties created hereunder are performable in Mississippi."

In an attempt to provide a factual basis for validating a choice of law provision, some drafters will combine a choice of law provision (selecting a particular state's law as applicable) with a factual description of the chosen state's connection to the transaction. The provision in the current contract was drafted using this drafting strategy.

The second half of the sentence (the statement of fact) is relevant if and only if someone chooses to argue that the choice of law provision is unenforceable because the transaction governed by the contract has an insufficient connection to the State of Mississippi.

Paragraph VII does not provide that Mississippi law will govern ALL issues. Paragraph VII provides that Mississippi law will govern issues of construction of the contract itself. Issues other than contract construction, such as the statute of limitation issues involved in this Motion, therefore, are not within the scope of the choice of law provision and the governing law should be selected based on general choice of law principles. Statutes of limitation being procedural should be

6

governed by the law of the forum state even when the law of other states govern certain other substantive issues involved in the case.[11]

### A. La. Rev. Stat. §9:5829: Suspension and Extension of Prescription and Peremption; Exceptions

As a result of the COVID-19 pandemic, the Louisiana legislature enacted La. R.S. 9:5829 which became effective on June 9, 2020. La. R.S. 9:5829(A) states:

> All prescriptions, including liberative, acquisitive, and the prescription of nonuse, abandonment periods, and all peremptive periods ***shall be subject to a limited suspension or extension during the time period of March 17, 2020,*** through July 5, 2020; however, the suspension or extension of these periods shall be limited and shall apply only if these periods would have otherwise expired during the time period of March 17, 2020, through July 5, 2020. The right to file a pleading or motion to enforce any right, claim, or action which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020.[12]

Defense counsel in this memorandum in support of their Rule 12(b)(6) motion to dismiss on grounds of peremption have taken into account the suspension of peremptive periods are mandated by La. R.S. §9:5829.

### B. Plaintiffs' Claims are Perempted Pursuant to La. Rev. Stat. §9:5605

Louisiana Revised Statute §9:5605, setting forth the time limitations for bringing a claim against an attorney for legal malpractice provides that:

> no action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however,

---

[11] *Sun Oil Co. v. Wortman*, 486 U.S. 717 (1988)' *Federal Deposit Ins. Corp. v. Petersen*, 565 F. Supp. 1007, 1009 (D. Co. 1983) ("As a general rule, the law of the forum governs the selection of statutes of limitation.")

[12] La. R.S. 9:5829(A).

even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Subsection B of La. Rev. Stat. §9:5605 clarifies that the one- and three-year periods outlined in Subsection A are preemptive and thus, "may not be renounced, interrupted, or suspended." "Peremption has been liked to prescription; namely, it is prescription that is not subject to interruption or suspension."[13] However, peremption significantly differs from prescription in several respects.[14] Louisiana Civil Code Article 3458 provides that, "[p]eremption is a period of time fixed by law for the existence of a right." Thus, a preemptive statute extinguishes the previously existing right so that, upon expiration of the preemptive period, the cause of action or right no longer exists and accordingly cannot be enforced."[15] Further, unlike prescriptive periods, peremption may not be renounced, interrupted or suspended.[16]

Under these provisions, a claim against an attorney for legal malpractice must be filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, however, all such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

      **a. Any claim the plaintiffs named in this motion allegedly had relating to any alleged malpractice committed by the defendants is perempted as a matter of law.**

The latest one can file a legal malpractice action is three years from the date of the alleged malpractice, or one year from the date of discovery of the alleged malpractice, whichever comes

---

[13] *Rando v. Anco Insulations, Inc.*, 08-1163 (La 5/22/09), 16 So.3d 1065, 1082.

[14] *Id.* at 1298.

[15] *Id.*; *Pounds v. Schori*, 377 So.2d 1195, 1198 (La. 1979).

[16] La. Civ. Code Art. 3461.

first.[17] In the instant lawsuit, Plaintiffs' petition alleges that during the latter part of March 2019 or in April 2019, Plaintiffs received form letters from Defendant law firms informing them, for the first time, that his or her "claim was one of many which were denied by BP" and that the Plaintiffs and the Defendant law firms were "left with no possibility of an effective appeal." Thus, the three-year peremption period began when the Defendants' allegedly failed to pursue additional appellate options on behalf of the individual Plaintiffs, purportedly leaving the Plaintiffs no further recourse regarding their subsistence claims.

The three-year peremption period for each Plaintiff's claim began to run on or before the deadline to appeal the decision denying each Plaintiff's respective claims. Plaintiffs do not allege any action at all on the part of the defendants on or after that deadline. They do not allege that the defendants took an appeal or mishandled an appeal    as follows:

Plaintiffs Lloyd Cancienne and Plaintiff Thomas Tegart both received a "denial notice" from the Deepwater Horizon Claims Center. Each of these notices were entitled "Notice of FWA Claim Denial." In the section entitled "II. Explanation of Claim Denial," the "denial notice" states:

> This Notice is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program"). We have reviewed your claim and we are denying your claim under the terms of the Economic and Property Damages Settlement Agreement ("Settlement Agreement") for the following reasons(s):
>
> 1. **False Information Regarding Species and Harvest Amounts of Fishing Locations.** A Fraud Waste and Abuse review revealed clear and compelling evidence this claim contains false, misleading, forged, or fabricated documents, material to the evaluation of this claim, which does not appear to result solely from error or mistake.
>
> a. The Claimant alleged highly improbable loss amounts.

In Section III entitled "Your Options After This Notice," the "denial notice" states:

---

[17] *Smart v. Vazquez*, 119 So.3d 091 (La. App. 4 Cir. 6/12/2013).

9

>Because your claim is denied, you do not have the option to resubmit your claim to the Settlement Program. You do have the option to submit your claim for Reconsideration and, if your denial is not overturned on Reconsideration, you may have the option to file an Appeal in accordance with your rights under the Settlement Agreement. **If you accept an FWA Denial Notice, of if you do not timely request Reconsideration, your claim will be closed with finality and you will have no further recourse.**

Defendants then, through the course of their representation of Tegart and Cancienne, received a "FWA Request for Appeal Form" for both Tegart and Cancienne.

Plaintiff Tegart's "Date of FWA Post-Reconsideration Denial Notice"[18] issued by the DHECC is dated September 13, 2016. The "Deadline to Request Appeal" as stated in that Notice is October 13, 2016. Plaintiff Tegart does not allege that Defendants took or in any way mishandled any appeal on or after October 13, 2016. Plaintiff Tegart does not allege that Defendants took any action causing loss of his alleged subsistence claim at any time on or after October 13, 2016. Thus, October 13, 2016 is the latest date the Court could consider as being a date on which an act occurred causing the loss of Tegart's subsistence claim. Plaintiffs' Joint Petition for Damages was not filed until July 6, 2020, nearly four years after the last date that could be considered an act of alleged malpractice. Thus, Plaintiff Tegart's claim alleging malpractice on behalf of Defendants is perempted by the three-year time period.

Plaintiff Cancienne's "Date of FWA Post-Reconsideration Denial Notice"[19] issued by the DHECC is November 30, 2016. The "Deadline to Request Appeal" to the federal district court as stated in that Notice is December 30, 2016. Plaintiff Cancienne-does not allege that Defendants took or in any way mishandled any appeal on or after December 30, 2016, In fact, Plaintiff Cancienne does not allege that Defendants took any action causing loss of his alleged subsistence

---

[18] See Exhibit "A" attached.

[19] See Exhibit "B" attached.

claim at any time on or after December 30, 2016. Thus, December 30, 2016 is the latest date the Court could consider as being a date on which an alleged act of malpractice occurred causing the loss of Cancienne's subsistence claim. Plaintiffs' Joint Petition for Damages was not filed until July 6, 2020, nearly four and a half years after the last date when any alleged act of malpractice could conceivably have occurred. Thus, Plaintiff Cancienne's claim alleging malpractice on behalf of Defendants is perempted by the three-year time period.

Plaintiffs Pellegrin's and Bascle's claims were denied for reasons associated with failed "field visits." For these individuals, the "Post-Reconsideration Denial Notice" states

1. The Field Visit Team could not verify that you fished and/or hunted the quantities of Seafood and/or Game you claimed in your Claim Form or Subsistence Claimant Sworn Written statement.

Plaintiff Pellegrin's subsistence claim was denied as a result of a failed "field visit." The "Date of Notice" is January 13, 2017. The "Deadline to Appeal Request" is stated in the Notice as February 13, 2017.[20] Plaintiff Pellegrin does not allege that Defendants took or in any way mishandled any appeal on or after February 13, 2017. Plaintiff Pellegrin actually does not allege that Defendants took any action causing loss of his alleged subsistence claim at any time on or after February 13, 2017. Thus, February 13, 2017 is the latest date the Court could consider as being a date on which an alleged act of malpractice occurred causing the loss of Pellegrin's subsistence claim.

Three years from February 13, 2017 is February 13, 2020. Plaintiffs' Joint Petition for Damages was not filed until July 6, 2020. For reasons previously stated, February 13, 2020 does not fall within the period of time to which the Governor's or the Legislature's "peremption pause"

---

[20] See Exhibit "C" attached.

applied. Thus, Plaintiff Pellegrin's claim alleging malpractice on behalf of Defendants is perempted by the three-year time period.

Plaintiff Bascle's subsistence claim was denied not because of a failed "field visit," but was denied due to "unresponsiveness." In the Section entitled "Reconsideration Analysis," the DHECC states of Bascle: "Denied for unresponsiveness. The claimant did not respond to the Field Visit Notice within the deadline." The "Date of Notice" is January 5, 2017. The "Deadline to Appeal Request" is February 6, 2017.[21]

Plaintiff Bascle does not allege that Defendants took any action causing loss of his alleged subsistence claim at any time on or after February 6, 2017. Thus, February 6, 2017 is the latest date the Court could consider as being a date on which an alleged act of malpractice occurred causing the loss of Bascle's subsistence claim. Plaintiffs' Joint Petition for Damages was not filed until July 6, 2020. For reasons previously stated, February 6, 2017 does not fall within the period of time to which the Governor's or the legislature's "peremption pause" applied. Thus, Plaintiff Bascle's claim alleging malpractice on behalf of Defendants is perempted by the three-year time period.

Plaintiff Pitre's subsistence claim was denied because Plaintiff Pitre "did not prove [he was] licensed to hunt and/or fish before and at the beginning of your fishing and/or hunting losses, or that you are exempt from licensing requirements."[22] The "Date of Notice" of the "Notice of Appeal Panel Decision" is September 19, 2016. The "Deadline to Request Discretionary Court Review" is October 3, 2016.

Plaintiff Pitre does not allege that Defendants took any action causing loss of his alleged subsistence claim at any time on or after October 3, 2016. Thus, October 3, 2016 is the latest date

---

[21] See Exhibit "D" attached.

[22] See Exhibit "E" attached.

the Court could consider as being a date on which an alleged act of malpractice occurred causing the loss of plaintiff Pitre's subsistence claim.

Three years from October 3, 2016 is October 3, 2019. Plaintiffs' Joint Petition for Damages was not filed until July 6, 2020. Thus, Plaintiff Pitre's claim alleging malpractice on behalf of Defendants is perempted by the three-year peremptive period.

Plaintiff Richard's subsistence claim was denied and the "Date of Notice" is November 30, 2016. The "Deadline to Request Discretionary Court Review" is December 14, 2016.[23]

Plaintiff Richard does not allege that Defendants took any action causing loss of his alleged subsistence claim at any time on or after December 14, 2016. Thus, December 14, 2016 is the latest date the Court could consider as being a date on which an alleged act of malpractice occurred causing the loss of Richard's subsistence claim. Plaintiffs' Joint Petition for Damages was not filed until July 6, 2020. For reasons previously stated, February 6, 2017 does not fall within the period of time to which the Governor's or the Legislature's "peremption pause" applied. Thus, Plaintiff Richard's claim alleging malpractice on behalf of Defedants is perempted by the three-year time period.

### b. Plaintiffs' fraud allegations fail the particularity requirement of Rule 9 and should be dismissed for failure to state a claim upon which relief may be granted in addition to making La. Rev. Stat. §9:5605(E) inapplicable.

La. R.S. 9:5605(E) states "The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953." Louisiana Civil Code article 1953 defines "fraud" as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of inconvenience to the other. Fraud may also result from silence or inaction." The Louisiana Civil Code and the Federal

---

[23] See Exhibit "F" attached.

13

Rules of Civil Procedure both mandate that fraud must be plead with particularity. In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.[24] Rule 9(b) requires the plaintiff pleading fraud to "state the circumstances constituting fraud with particularity.[25] The failure to plead fraud with particularity is treated as a failure to state a claim upon which relief can be granted under Rule 12(b)(6).[26] The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[27]

Plaintiffs' Joint Petition for Damages does not satisfy these standards as to a claim against Defendants for fraud. The Petition for Damages does not contain any factual allegations to show Defendants made any misrepresentations or fraudulently concealed any facts or information from Plaintiff. Specifically, plaintiffs nowhere allege that after plaintiffs' claims were "closed" by DHECC, Defendants stated to plaintiffs that their claims were pending. Further, Plaintiffs' Petition for Damages fails to even cite or reference Louisiana Civil Code Article 1953 or any federal or state fraud statute, throughout the entirety of the Petition. Therefore, any allegations of fraud against Defendants should be dismissed for failure to state a claim, and, in the alternative, should not be used by Plaintiffs to argue that three-year perempted period provided by La. R.S. §9:5605 is not applicable pursuant to La. R.S. §9:5605(E).

### III.   CONCLUSION

This Rule 12 Motion to Dismiss should be granted.

---

[24] La. Civ. Code art. 856.

[25] *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) citing Fed. R. Civ. P. 9(b).

[26] *Id.*

[27] *In re JCC Envtl., Inc.*, 575 B.R. 692, 699 (E.D. La. 2017).

Plaintiffs' claims relating to the alleged malpractice committed by Defendants is perempted as a matter of law under La. Rev. Stat. §9:5605 because more than three years have elapsed since the last act of alleged malpractice committed by Defendants. Thus, for the foregoing reasons, Howard L. Nations, Cindy Nations, Howard Nations, APC, Gregory D. Rueb, Rueb & Motta, APLC, and The Rueb Law Firm, APLC respectfully request that this Honorable Court dismiss these suits and all claims against them with prejudice, and at Plaintiffs' cost.

        */s/ Joanne Rinardo*
JUDY L. BURNTHORN (#17496)
jburnthorn@deutschkerrigan.com
JOANNE RINARDO (#24201)
jrinardo@deutschkerrigan.com
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: 504 93 0699
Facsimile:  504 566 4088

**Attorneys for Defendants Howard L. Nations, APC; Howard L. Nations; Cindy Nations; Rueb & Motta, APLC; The Rueb Law Firm, APLC; and Gregory Rueb**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been delivered to all counsel of record, by depositing a copy of the same in the United States mail, first class postage prepaid at their last known address of record, or by electronic mail, or by ECF Notice, or by facsimile transmission or by hand delivery today, November 23, 2020.

        */s/ Joanne Rinardo*